# EXHIBIT 6

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: 55 196 Y 00015 12
    Tina Mawing and
    CT Horsemen's Benevolent Protective Assoc.
    and
    PNGI Charles Town Gaming, LLC

## PARTIAL FINAL AWARD OF ARBITRATOR

We, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows with respect to the issues/claims raised by the parties:

**Issue 1-Did Ms. Mawing have standing to allege violation of the CBA by Track's action in adopting a stall agreement which allegedly violated the CBA by providing that it superseded any provision in the CBA which conflicted with the provisions of the stall agreement?**

    Answer- no, Ms. Mawing did not have standing to assert such a claim. Although she was a third party beneficiary of the CBA, she could bring an action as a third party beneficiary only if she claimed damage by reason of the alleged violation. Here, however, she has no claim that she suffered any personal damage by reason of this alleged violation. There was no evidence to indicate that Ms. Mawing was authorized by the Association to bring such action on its behalf or that she was authorized by reason of her service on the Executive Board of the Association to bring such an action. Moreover, the Association (appearing by counsel) in a hearing with respect to discovery in this case waived any right to participate in this case as a party in interest and did not in fact so participate. Accordingly, Ms. Mawing does not have standing in this case to allege such a violation of CBA.

**Issue 2- Did Ms. Mawing state a claim for which relief can be granted when she alleged that West Virginia has a policy against improper use of pesticide and that she was retaliated against for complaining to state authorities about improper use of pesticide?**

    Answer- no. The statute in question does not create a private cause of action for retaliation against filing such a complaint. West Virginia courts have not recognized such a cause of action and have not adopted any general standard for determining when the West Virginia courts should create a private cause of action for a violation of a statute which expresses public policy. Indeed, since every statute presumably expresses public policy, the logic of Ms. Mawing's position is that West Virginia would recognize a private cause of action of retaliation for complaining to the appropriate authorities with respect to any violation of a statute. The West Virginia courts, however, have not recognized such a cause of action outside of the employment context. In addition, there is insufficient evidence that Ms. Mawing's complaint to the Department of Agriculture was responsible for her loss of stalls. Therefore, even if Ms. Mawing

stated a claim for which relief could be granted, the panel finds that Track did not take any adverse action against her for such reason.

**Issues 3- May Ms. Mawing amend her complaint to allege a specific violation of W. Va. Code §61-5-27(c) (3)?**

Answer, yes as previously ruled by the panel. Such action, even taken at the hearing, does not prejudice the Track in any way since it does not call for either party to present evidence that it would not have presented in any event. This amendment may change (or add to) the legal theories which Ms. Mawing is advancing but it does not impact the evidence which the parties would present and the panel would consider.

**Issue 4- Has Ms. Mawing established a violation of W. Va. Code § 61-5-27(c) (3)?**

Answer, no. Ms. Mawing has made a prima facie case of a violation of W. Va. Code §61-5-27 (c) (3) by showing that she testified in the Funkhouser hearing and that several months after she testified, she lost four stalls. However, the evidence presented by the Claimant is insufficient to overcome the Track's explanation that it conducted a barn check as a result of Mr. Moore's daughter bringing a sick horse into the Track's barns and that every trainer who was found to have horses in stalls that did not belong to such trainer was penalized. Accordingly, the panel cannot conclude that Mawing's temporary loss of stalls was retaliation for her testimony at the Funkhouser hearing. In addition, the fact that the Track increased Ms. Mawing's allocation of stalls immediately following her testimony in the Funkhouser case (and prior to the barn check) indicates that the Track did not retaliate against Ms. Mawing for her testimony in the Funkhouser proceeding.

Ms. Mawing does not make a prima facie case of a violation of the above statute with respect to her statements to the Governor and the ensuing loss of stalls since these statements were not in the form of testimony at a public or official hearing. The same holds true with respect to her complaint about poison in the barn which she made both to the Department of Agriculture and to the stewards.

**Issue 5- Did the Track's April, 2009 reduction in the number of all stalls assigned Ms. Mawing violate the CBA?**

Answer, yes. The CBA provides that the Track may discipline a trainer for violation of published rules. According the letter sent Ms. Mawing in April, 2009, her stalls were being reduced from 9 to 5 because she had violated a published rule requiring written permission from the Racing Secretary to use stalls of another trainer. No evidence was presented at the hearing to show that this alleged rule had been published and the evidence indicates that, in practice, that oral permission was acceptable. There is nothing in the stall agreement which establishes such a rule. Accordingly, this action violated the provisions of the CBA.

**Issue 6- Has Ms. Mawing established a Section 1983 claim involving taking of a property interest which (1) was protected by the Fourteenth Amendment and (2) resulted from state action?**

Answer, no. First, Ms. Mawing does not have a property interest in her allotment of stalls. The stalls are in barns owned by the Track. The stall agreement states plainly that the stalls belong to the Track and what the trainer is getting under the agreement is the right to use x number of stalls for a six month period. There is no agreement between the Association and the

Track as to how the stalls are to be allocated; this matter is reserved to the Track. Accordingly, the action of the Track in refusing to allot stalls to Ms. Mawing did not take away a property interest which was protected by the Fourteenth Amendment. Mawing's invocation of *Perry v. Sinderman* is unavailing for several reasons: (1) nothing in the agreement or in any other understanding grants the trainer an interest in the stall sufficient to create a property interest, (2) the criteria used in making stall allotment decisions was never communicated to the horsemen and thus could not result in some implied agreement, practice or policy as to how the stall allotment was to be handled and (3) the criteria used in making stall allotment decisions was not really objective. Not only did the criteria change from time to time, but criteria such as "winning percentage" was never defined objectively. Accordingly, the horsemen had no reason to believe that they had some entitlement to the stalls. Rather the language of the stall agreement, which was approved by the Association, made it clear that they had no such entitlement

Second, the Track is a private, not public, entity. The decision by Mr. Finamore to intervene in the stall allotment process because of his anger at Ms. Mawing's alleged statements to the Governor was the decision by an official of a private entity. There is no evidence that the Governor requested any such action by the Track or that the Track took action in conjunction with the Governor. There is, then, no basis for finding that the Track's action in taking away her stalls was somehow state action which would support a Section 1983 claim. The fact that the state of West Virginia extensively regulates race tracks does not mean that non-regulated action by the Track (such as the allocation of stalls) is somehow converted to state action. Mawing's claim that the racing secretary was a state official and that his participation in stall allocation is chargeable to the state is inapplicable in this case when the racing secretary did not participate in the decision to deny Mawing the stalls. The decision to deny Ms. Mawing the stalls was a unilateral decision by Track's General Manager Britton who was responsible for track operations.

With respect to the state action argument, the panel recognizes the argument that the extensive regulation of the Track by the state and the unique relationship between the Track and the state are such that the acts of the Track should be construed to be state action. However, the panel does not believe that there is sufficient legal authority to support a conclusion of state action on the facts of this case.

In view of the above, Ms. Mawing has not stated a prima facie case for the violation of Section 1983.

**Issue 7- Has Ms. Mawing established a Section 1983 claim for retaliation for her exercise of her First Amendment rights?**

Answer, no. Mr. Finamore told Mr. Britton to take into account Ms. Mawing's alleged remarks to the Governor in making future stall allotment decisions and Mr. Britton by his own account took Mr. Finamore's directive into account in refusing to allot any stalls to Ms. Mawing. However, as set forth above, there is no evidence that the Governor requested any such action by the Track or that the Track took action in conjunction with the Governor. There is, then, no basis for finding that the Track's action in taking away her stalls was somehow state action. The fact that private individuals may interfere with the exercise of First Amendment rights does not give rise to a cause of action under Section 1983. There is no state action here which would give rise to a valid Section 1983 claim.

**Issue 8- Has Ms. Mawing established a claim within the terms of West Virginia Constitution, Article 3, Section 10 with respect to the Track's refusal to assign stalls to her?**

Answer, no. First, this claim was not raised by the pleadings. Even if the panel were to consider the claim despite this point, the panel would reject it because the analysis for a claim under this portion of the West Virginia Constitution is the same as the analysis for a claim under Section 1983. Accordingly, such a claim would fail for the same reason that the claims under Section 1983 fail.

**Issue 9- Did the Track violate the non-discrimination clause in the CBA?**

Answer, yes. Ms. Mawing was at the meeting with the Governor because she was on the Executive Board of the Association and the Governor, in an effort to mediate the dispute between the Track and the Association, was meeting with the Association leadership to understand its concerns and petitions. Her presence at the meeting and any statements that she made at the meeting involved Association activity. That Mawing voiced concern to the Governor about track conditions did not involve an abandonment of the Association's agenda for her own. Track conditions were a legitimate concern of the Association as recognized by the fact that the CBA addressed the issue in the case of poison. The fact that Ms. Mawing spoke about matters based on her own experience is hardly unusual; in collective bargaining, it is extremely common for Union spokesmen to make statements about or based on their own experience. Her actions and statements in the meeting with the Governor were protected by the anti-discrimination clause in the CBA.

As set forth with respect to issue six, the Track's own evidence provides direct proof that it discriminated against Ms. Mawing in the sense that it took action with respect to stall allotment solely because of her Association activities involved with her statements at the meeting with the Governor. Significantly, in its brief (p.30 ), the Track admits that Ms. Mawing's participation on behalf of the Association in the meeting with the Governor and her alleged statements to the Governor played a role in the decision not to allocate any stalls to her. Thus, the Track's action violated the CBA.

However, even if there was no direct evidence of discrimination and the panel had to apply conduct pretext analysis similar to that in *McDonnell Douglas*, it would reach the conclusion that the Track discriminated against her. The panel does not credit Mr. Britton's articulated rationale for taking away the stalls, *i.e.*, that she had violated Track rules in having her horses in the wrong stalls several months earlier and that that her horses had not had a sufficient winning protection. There are a number of reasons for the panel's rejection of the Track's articulated rationale for the refusal to grant Ms. Mawing any stalls. First, no one else who had horses in the wrong stalls was denied stalls at later allotment periods as the Track did with respect to Ms. Mawing. Second, while Mr. Britton testified that he inquired into Ms. Mawing's winning percentage, Mike Elliot testified that the Track did not decide to take into account winning percentages until over a year after Ms. Mawing was denied stalls. Moreover, the Track presented no evidence that it kept records of Ms. Mawing's (or any other trainer's) winning records at this time. Third, there were five other members of the stall allotment committee present at the stall allocation meeting described by Mr. Britton (and all five of these were employees of the Track). All gave such differing accounts of what did or did not happen that it is difficult to believe that they were at the same meeting. They were unanimous however in their inability to corroborate Mr. Britton's testimony with respect to the decision (and the rationale for the decision) to deny Ms. Mawing's application and several denied that there had been any discussion of Ms. Mawing's application at the meeting. The testimony produced by the Track was so conflicting and inherently incredible that the panel has rejected in its entirety the Track's explanation for the denial of Mawing's applications for stalls. A further reason for rejecting Mr. Britton's articulated rationale for the

denial of the Mawing stall application was the fact that the other Track witnesses gave different rationales for this action. This shifting of rationales has always been recognized by the courts as a basis for concluding that the articulated rationale for a decision was pretextual and an excuse for discrimination.

Now, the Track argues that Ms. Mawing' statements to the Governor to the effect that the Track had deliberately poisoned her animals (goat and horse) and had intentionally positioned a wire in the barn so that horses in the barn would be disabled or killed by the wire were so extreme that somehow their utterance deprived Ms. Mawing of her protection under the CBA for statements made while participating in Association activity. The panel rejects this argument for several reasons. First, as a matter of law, Ms. Mawing would not have lost the protection of the CBA by uttering what the Track contends are extreme and untrue statements. By analogy the First Amendment protects extreme and inaccurate statements. The CBA protects all statements made in the course of Association activities. Ms. Mawing was not crying "Fire" in a crowded movie theater. Second, there is no competent evidence to show that Ms. Mawing made the alleged statements. She certainly denied making them. The other three participants in the meeting with the Governor- Mr. Puccio, Mr. Hale and Mr. Funkhouser- testified that they had no recollection of Ms. Mawing's making such statements although they did remember that there was a discussion about rat poison. It seems undisputed that Ms. Mawing presented picture of the dead horse and goat at the meeting. They remembered some reference to a wire but not who made the remark or in what context the remark occurred. Mr. Finamore testified that the Governor told him that Ms. Mawing had claimed that the Track had deliberately poisoned her horse and goat and that the Track had strung a wire in the barn in an effort to harm the horses stationed in the barn. However, this testimony as to the Governor's remarks was admitted not for purpose of truth of the matter asserted therein, but to show its impact on Mr. Finamore's state of mind. Mr. Finamore's testimony does not constitute competent evidence that Ms. Mawing made these statements. Moreover, it does not seem likely, given the fact that the Governor was trying to mediate a dispute between the Association and the Track, that the Governor reacted as strongly in his conversation with Mr. Finamore as Mr. Finamore recollects. In so finding, the panel is not suggesting that Mr. Finamore testified dishonestly about his recollection of the Governor's statement but merely that he was so disturbed by the Governor's call that he did not understand what the Governor was really saying, something which frequently happens when someone is excited or disturbed.

**Issue 10- Is Ms. Mawing entitled to damages for the loss of stalls?**

Answer, yes. Since Ms. Mawing was a third party beneficiary of the CBA, and since she was personally injured by the Track's violation of the anti-discrimination provision of the CBA, she is entitled to an award of damages for the breach of the same.

**Issue 11- Is Ms. Mawing's claim for damages limited to damages incurred with respect to the stall allotment period in which the number of her stalls was reduced and with respect to the stall allotment period following the August, 2009 stall allotment decision?**

Answer, no. First, it appears that the Track has abandoned the contention that her damages are so limited since it did not address this claim in its post hearing brief. In any event, the Track employees testified unanimously that once a trainer lost his/her stalls, the trainer was unlikely ever to regain stalls because the stalls were normally allocated to the existing stall holders. Accordingly, Ms. Mawing's application for stalls in each of the subsequent periods was

not considered by the stall allotment committee but was denied sub silentio. Regardless of whether one considers the failure of the stall allotment committee to award her stalls in the following allotment periods was the continuing result of past discrimination or repeated separate acts of discrimination, her claim for damages is not limited to the specific allotment periods in question but encompasses all future allotment periods through the end of the stall allotment period in which this award is issued.

**Issue 12- Is Ms. Mawing entitled to recover damages at the average rate of $275 per month for 9 stalls for the damage period determined by the arbitrators?**

Answer, yes with two exceptions. A plaintiff is not required to prove damages with scientific accuracy. The panel is satisfied that $275 per month per stall represents a reasonable calculation of the damages that Ms. Mawing incurred for stall rental. The panel is also satisfied that the cases in which she was reimbursed for stall rent by Mr. Wratchford and Mr. Barr were an exception to her normal practice of not collecting from clients for the additional cost of stall rent. However, the amount of claimed damages for loss of stalls ($145,286) needs to be reduced to take into account those stall allocation periods in which she requested fewer than nine stalls and to take into account her reimbursement of stall rent by Mr. Wratchford and Mr. Barr for the periods in which she or Mr. Mawing testified she was being paid by them. The panel accordingly directs the parties to determine the damages due based on the records of the stall allotment committee and the Mawings' testimony with respect to her receipt of payment (reimbursement) for stall rent. Any disputes are to be referred to the panel with a statement of the positions of the parties and the evidence in support of each of their positions so that the panel can rule.

**Issue 13- Is Ms. Mawing entitled to damages for transportation of horses to the track?**

Answer, no. While it is undoubtedly true that Ms. Mawing sustained additional costs (damages) for transporting horses to the track because she no longer had stalls at the track, and while she presented evidence showing the amount that she paid for transportation of horses, she truthfully admitted that she would have engaged in some haulage of horses under any circumstances because she might not have kept every horse at the track and also because she occasionally transported her horses to other tracks. She could not distinguish in her records between haulage costs occasioned by lack of stalls and costs incurred for other purposes. Although as noted earlier, a plaintiff is not required to prove damages with scientific specificity, the plaintiff must provide the trier of fact with a reasonable basis for the calculation of damages. Ms. Mawing has not done so with respect to the claim for haulage and accordingly, the panel may not award damages with respect to the costs incurred for transportation of horses to the track.

**Issue 14- Is Ms. Mawing entitled to punitive damages?**

Answer, no. Ms. Mawing has prevailed on a claim for breach of contract. Punitive damages are a tort/statutory remedy which is not available in breach of contract actions.

**Issue 15- Is Ms. Mawing entitled to injunctive relief?**

Answer, yes. Because of the pervasive and continuing effects of the discrimination experienced by Ms. Mawing, the panel orders the Track to award her in each and every

allocation period following the allocation period in which this award is issued the stalls which she requests: provided, however, that (1) under no circumstances is the Track required to allot her more than nine stalls, (2) Ms. Mawing complies with the Track's reasonable rules and regulations, and (3) there is no significant and substantial change in conditions that would result in this decision becoming inequitable. The panel grants this unusual relief because all of its members are convinced, in view of the egregious nature of the Track's conduct in this case and the Track's attempt to cover up its discrimination against Ms. Mawing by means of disingenuous testimony that such relief is necessary to eliminate the continuing effects of past discrimination and to prevent any future discrimination and retaliation by the Track personnel responsible for the initial discrimination.

### Issue 16- Is Ms. Mawing entitled to prejudgment interest?

Answer, yes. She is entitled to prejudgment interest with respect to each stall allotment period in which she was denied stalls with such prejudgment interest calculated on each such amount from the last day of such period until the date of this award. Such prejudgment interest should be calculated in accordance with the law of the state of West Virginia. Any disputes about the amount of such prejudgment interest are to be referred to the panel.

### Issue 17- Is Ms. Mawing entitled to post judgment interest?

Answer, yes. She is entitled to post judgment interest with respect to all sums due under this award from the date of the award until the day that judgment is satisfied. Such post judgment interest shall be calculated in accordance with the law of the state of West Virginia. Any disputes about this matter are to be referred to the panel.

### Issue 18- Is Ms. Mawing entitled to an award of attorneys' fees?

Answer, yes. Under WV law, courts may award attorney fees and costs to the claimant for an appropriate portion of their work where there is evidence of egregious misconduct. The Track's argument on attorney fees is mistaken. West Virginia recognizes that "[a] well established exception to the general rule prohibiting the award of attorney fees in the absence of statutory authorization, allows the assessment of fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See, e.g., Bowling v. Ansted Chrysler-Plymouth-Dodge,* 188 W. Va. 468, 474 (1992). The principle has been cited in a number of cases. The Track argues that fees, under this exception to the American rules regarding attorney fees, only apply where the bad faith occurs during the litigation citing a case where the West Virginia Supreme Court of Appeals referenced a Pennsylvania statute. However, the Supreme Court of Appeals has expressly rejected this limitation stating that "'[b]ad faith' may be found in conduct leading to the litigation or in conduct in connection with the litigation. *Sally-Mike Properties v. Yokum,* 179 W. Va. 48, 50-51 (1986)(emphasis added). *See also Estate of Verba v. Ghaphery,* 210 W. Va. 30 ( 2001) which states:

> Our law recognizes that "as a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement except when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 9, *Helmick v. Potomac Edison Co.,* 185 W. Va.

269, 406 S.E.2d 700 (1991). This Court has permitted an award of attorney fees where public officials deliberately disregarded mandatory statutory provisions, *see Richardson v. Town of Kimball*, 176 W. Va. 24, 340 S.E.2d 582 (1986); in a trespass action where the losing party intentionally encroached and personally removed boundary markers, *see Miller v. Lambert*, 196 W. Va. 24, 467 S.E.2d 165 (1995); where fraud was shown, see *Bowling v. Ansted Chrysler-Plymouth-Dodge,* 188 W. Va. 468, 425 S.E.2d 144 (1992); in an action against a fiduciary for mismanagement, *see Old Nat'l Bank of Martinsburg v. Hendricks*, 181 W. Va. 537, 383 S.E.2d 502 (1989); in an action to enforce an insurance contract, *see Hayseeds v. State Farm & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986); and where an insurer unfairly failed to promptly settle a legitimate claim, *see Jenkins v. J.C. Penney Casualty Insurance Co.*, 167 W. Va. 597, 280 S.E.2d 252 (1981), overruled on other grounds as stated in *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W. Va. 155, 451 S.E.2d 721 (1994)."

The panel rules that the award of attorney's fees to Ms. Mawing is appropriate in this case for the Track's bad faith, vexatious, wanton and oppressive conduct both in its discrimination against Ms. Mawing and in its conduct in litigating the case. This conclusion is based upon both of the considerations the Supreme Court of Appeals of West Virginia: "conduct leading to the litigation" and "conduct in connection with the litigation." The Track's conduct leading to the litigation includes the Track's discriminatory conduct in denying Ms. Mawing stalls over a number of years for clearly unlawful reasons, a wrong that, in all likelihood, would have continued indefinitely into the future had she not pursued this case. The conduct in connection with the litigation included the presentation of testimony that was, in the opinion of all panel members, blatantly unworthy of belief. Accordingly, it directs Ms. Mawing to submit a petition for such attorney fees and costs within twenty days of the date of this award accompanied by appropriate documentation. The Track is given twenty days after such submittal to respond to the same. At that point, the panel will decide whether this matter may be resolved on the basis of the submittals or whether a hearing is required.

The arbitrators retain jurisdiction for the limited purpose of resolving any disputes about the calculation of damages and attorney's fees required by the above award and for the apportionment of the administration costs of this arbitration and the arbitrator's compensation.

This Final Partial Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

| | | |
|---|---|---|
| October 7, 2013 | /s/ | William M. Wycoff |
| October 7, 2013 | /s/ | Allan Karlin |
| October 7, 2013 | /s/ | James T. Carney |

I, William M. Wycoff, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

October 7, 2013                                             /s/  William M. Wycoff


I, Allan Karlin, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

October 7, 2013                                             /s/  Allan Karlin


I, James T. Carney, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

October 7, 2013                                             /s/  James T. Carney