# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**TINA MAWING, and**
**THE HORSEMEN'S BENEVOLENT**
**PROTECTIVE ASSOCIATION,**

    Plaintiffs,

v.                                          **Civil Action No. 3:14-CV-2**
                                                    **(BAILEY)**

**PNGI CHARLES TOWN GAMING, LLC,**
**d/b/a CHARLES TOWN RACES AND SLOTS,**

    Defendant.

## ORDER CONFIRMING ARBITRATION AWARD

Currently pending before this Court is Petitioner PNGI Charles Town Gaming, LLC's Motion to Vacate Arbitration Award [Doc. 2] and the Respondents' Motion for Leave to File American Arbitration Association's Decision [Doc. 15]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the Motion to Vacate should be **DENIED**.

## BACKGROUND

### I.  Factual History

Tina Mawing ("Mawing") is a horse trainer who sued PNGI Charles Town Gaming, LLC ("PNGI"), a licensed racing association, for not renewing her stall license agreement after it expired in August 2008. Also a plaintiff in the suit is the Horsemen's Benevolent Protective Association ("HBPA"), a non-profit association comprised of owners, trainers, and owner-trainers of thoroughbred racing horses. An agreement between HBPA and

1

PNGI establishes, among other things, that PNGI shall only negotiate with HBPA as the exclusive bargaining agent of its members (the "HBPA Agreement"). Mawing is an HBPA member.

PNGI owns approximately 1,338 horse stalls, which it licenses to horse trainers on an individual basis through Revocable Stall License Agreements. These agreements typically last for six months at a time, and are not automatically renewable. PNGI has created a stall allocation committee to allocate its stalls. The stall allocation committee consists of six individuals, including the general manager of PNGI, the general manager of racing operations, the director of racing, the racing secretary, the barn superintendent, and the assistant barn superintendent. The committee meets prior to the end of each stall allocation term to review and consider the stall applications for the upcoming term. According to PNGI, the committee does not use any written criteria in determining how to allocate stalls. Instead, the committee generally considers: (1) the number of racing starts the applicant has in proportion to the number of stalls he or she has or is seeking (often referred to as "starts per stall"); (2) the quality of the horses the applicant trains, specifically considering the horses' winning percentages; (3) the types of horses the applicant trains; and (4) whether the applicant follows the PNGI rules. The committee places particular emphasis on these factors with regard to the previous stall allocation term.

By letter dated February 7, 2008, the committee allocated nine stalls to Mawing for the March 1, 2008, through August 31, 2008, term. On April 25, 2008, the committee reduced Mawing's number of stalls from nine to five, citing Mawing's use of four stalls belonging to other licensees without the written permission of the racing secretary, in violation of PNGI rules. At its August 2008 meeting, the committee decided not to grant

Mawing any stalls for the September 1, 2008, through December 31, 2008, term.

II. **Procedural History**

On September 11, 2008, Mawing and HBPA filed suit against PNGI in the Circuit Court of Jefferson County, West Virginia, requesting injunctive relief and pleading only state law claims. The plaintiffs then filed an Amended Complaint on September 12, 2008, and a Second Amended Complaint on August 7, 2009, again stating only state law claims. However, in responding to a motion for summary judgment filed by PNGI, the plaintiffs asserted that PNGI's refusal to renew Mawing's stall license agreement constituted: (1) a deprivation of her property without due process; (2) retaliation for her testimony in a legal proceeding before the West Virginia Racing Commission involving the HBPA, and for her complaints to track management regarding PNGI's use of rat poison in the barn area; and (3) a breach of the HBPA Agreement by allocating stalls based on HBPA activity. On October 6, 2009, arguing that the first two claims present federal questions, PNGI removed the above-styled action to the Northern District of West Virginia on the basis of federal question jurisdiction.

Because Mawing is a HBPA member, the HBPA Agreement governs PNGI's decision. That agreement contains an arbitration clause, which states as follows:

> In the event there is a disagreement between the parties as to whether any party has complied with the terms or conditions in this Agreement, then [PNGI] and HBPA shall each choose an Arbitrator and the two Arbitrators shall choose a third Arbitrator. The Board of Arbitrators shall decide the issues involved and each party agrees to be bound by the decision of the arbitration panel.

([Doc. 24-1] at ¶ 10.B). Accordingly, on May 18, 2010, pursuant to the parties' arbitration clause, this Court ordered this dispute submitted to arbitration.

PNGI selected Allan Karlin ("arbitrator Karlin"), Mawing and HBPA selected William Wycoff ("arbitrator Wycoff"), and those two selected the third, James Carney ("arbitrator Carney"). This panel held the arbitration hearing June 10-12, 2013. Post-hearing submissions were due July 31, 2013, and responses were due August 31, 2013. Following a brief extension, the panel issued its Partial Final Award on October 7, 2013 ("the October 7 Award").

The October 7 Award denied all of Mawing's claims except for breach of the no discrimination provision in the HBPA Agreement concerning allocation of stalls. As relief, the panel granted Mawing injunctive relief and awarded her up to nine stalls indefinitely into the future. In addition, the panel awarded damages and attorneys' fees. Subsequently, PNGI filed this action to vacate the panel's award.

## DISCUSSION

### I. Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" **Adkins**, 303 F.3d at 500 (quoting **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24 (1983)). Further, review of an arbitrators' award is so "severely circumscribed" that it is "among the narrowest known at law." **Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.**, 142 F.3d 188, 193 (4th Cir. 1998). "As long as the arbitrator is even arguably construing or applying the contract[,] a court may not vacate the arbitrator's judgment."

***Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31***, 933 F.2d 225, 229 (4th Cir. 1991). This is so because "to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." ***MCI Constructors, LLC v. City of Greensboro***, 610 F.3d 849, 857 (4th Cir. 2010).

II. <u>Analysis</u>

In its Motion to Vacate [Doc. 2], PNGI states three grounds to support a complete vacation of the award. First, the petitioner contends that arbitrator Wycoff did not participate in the deliberations and decision-making concerning the October 7 Award and that the remaining two arbitrators exceeded their authority by issuing the Award without arbitrator Wycoff's input. Second, the petitioner argues that the Award must be vacated because it is not a final and definite award in that it concedes that damages and attorneys' fees could not be calculated on the closed record. Third, the petitioner contends that arbitrator Karlin demonstrated gross and sustained bias against it throughout the course of the arbitration. This Court will address each argument in turn.

A. <u>Arbitrator Wycoff's Participation in the Award</u>

This Court finds that Arbitrator Wycoff participated in and signed the October 7 Award. PNGI's position is that arbitrator Wycoff did not participate in the arbitration after June 26, 2013, and question whether he affixed his name to the Award. PNGI believes that because arbitrator Wycoff's time records do not continue beyond June 26, 2013, he did not participate in reviewing the post-arbitration filings submitted by the parties on July 31 and August 30, 2013, or the issuance of the October 7, 2013, Award. Further, PNGI questions

5

whether arbitrator Wycoff participated in the October 7 Award because it only contains his electronic signature.

The petitioner cites two cases in which the arbitration was vacated due to untimely death or disqualification of arbitrators. See *CIA De Navegacion OMSIL, S.A. v. Hugo Neu Corp.*, 359 F.Supp. 898 (S.D.N.Y. 1973); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830 (11th Cir. 1991). Those cases, however, involved situations where the evidentiary hearing had concluded, but the arbitrator was no longer able to participate before a final decision could be made. Therefore, a whole new panel was warranted because the parties did not get the full benefit of their bargain to arbitrate before a panel of three arbitrators. In the instant case, however, arbitrator Wycoff passed away shortly *after* the October 7 Award. His name was on the Award, and although it was an electronic signature, the same is permitted. See 15 U.S.C. § 7001. Therefore, the parties received the benefit of their bargain to arbitrate before a panel of three.

B.  Arbitrator Karlin's Alleged Bias

In support of its Motion to Vacate the Arbitration Award, the petitioner asserts that the alleged bias of arbitrator Karlin exceeded his powers as an arbitrator. Petitioner states that "arbitrator Karlin's advocacy ranged from *sua sponte* adding claims to the case on respondents' behalf in order to ensure an award of attorneys' fees to the caustic cross-examination of PNGI witnesses and attempts to impeach their credibility." Petitioner also alleges *ex parte* communications with the respondents during the arbitrator selection process.

This Court has reviewed the record and finds these arguments to be disingenuous.

Therefore, this Court finds no reason to discuss the same any further.

C. <u>The October 7 Partial Final Award is an Enforceable Final Award</u>

Pursuant to 9 U.S.C. § 10 (2002), "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." It is under this provision that PNGI moves to vacate the October 7 Award. Specifically, PNGI argues that the Award fails to put to rest the issues of attorneys' fees and damages for breach of contract and that the calculation of such awards would require the arbitrators to reopen the record in order to take additional evidence.

In the October 7 Award, the arbitrators retained jurisdiction for the limited purpose of resolving any disputes regarding the calculation of damages and attorneys' fees as provided in the Award. The panel ordered Mawning to submit a petition for the same within twenty days of the date of the Award. PNGI was given twenty days after this submission to respond. If the parties could not reach an agreement, the panel would then determine whether a hearing would become necessary. No agreement was reached, and this litigation ensued.

It is clear from the October 7 Award that it was intended to constitute a final award. All claims were decided on the merits, and the panel clearly stated the method by which damages should be calculated. In **Herbst v. Hagenaers**, 33 N.E. 315 (1893), the court stated that "[w]hen an award does not appear upon its face to be definite and final and does not in itself contain the data *or means of working out a definite and final determination of the whole controversy submitted*, the powers conferred upon the arbitrators have not

7

been fully executed . . . and [the decision] must be set aside." (Emphasis added). This is not the case in the instant arbitration as the Award did provide the "means of working out a definite and final determination . . .." *Id*.

In reaching its decision that Mawing is entitled to recover damages for the nine stalls taken from her, the panel found a rate of $275 per month per stall represented a reasonable calculation. The amount of claimed damages for loss of stalls would then be $145,286. The panel recognized, however, that this amount would need to be reduced to take into account those stall allocation periods in which Mawing requested fewer than nine stalls and to take into account her reimbursement of stall rent from Mr. Wratchford and Mr. Barr. Thus, the panel provided the parties a calculable roadmap to follow by which damages could be determined. Specifically, the panel directed the parties to review the records of the stall allotment committee and the Mawings' testimony with respect to her receipt of payments for stall rent. Attorneys' fees are likewise easily calculable.

As such, the parties shall reach an agreement regarding damages and attorneys' fees as directed by the October 7 Award. <u>Should the parties fail to reach an agreement regarding the amount of damages and attorneys fees, these issues will be resolved in a new proceeding before a panel consisting of three new arbitrators</u>. *See* ***CIA De Navegacion OMSIL, S.A. v. Hugo Neu Corp.***, 359 F.Supp. 898 (S.D.N.Y. 1973)

## CONCLUSION

For the reasons stated above, this Court finds that Petitioner PNGI Charles Town Gaming, LLC's Motion to Vacate Arbitration Award **[Doc. 2]** should be, and hereby is, **DENIED**. Accordingly, the October 7 Award is **CONFIRMED**. Additionally, the Motion for

Leave to File American Arbitration Association's Decision Denying PNGI's Motion to Disqualify Arbitrator Karlin from Continuing Service; Reaffirming the Continued Service of Arbitrator Karlin; and Directing that Arbitration Proceed **[Doc. 15]** is **DENIED AS MOOT**. The Clerk is hereby **DIRECTED** to **STRIKE** this matter from the active docket of this Court.

**IT IS SO ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** April 29, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE